PETTIGREW, J.
|2In this case, appellants challenge a partial summary judgment rendered in favor of plaintiffs on the issue of liability pursuant to loan documents entered into between the parties. For the reasons that follow, we affirm.
*651 FACTS AND PROCEDURAL HISTORY
According to the record, GE Commercial Finance Business Property Corporation (“GECF”) is the holder and owner of a promissory note entitled “Amended and Restated Promissory Note” executed by Louisiana Hospital Center, L.L.C. (“LHC”) dated January 31, 2007, for the amount of $18,000,000.00 (“the Note”). The Note amended and restated an earlier promissory note in the amount of $15,000,000.00 that LHC had executed in favor of GECF on February 25, 2005. LHC executed the Note to acquire financing from GECF for the construction of a medical office and hospital facility in Hammond, Louisiana. As security for the financing, LHC executed a “Multiple Indebtedness Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing,” as well as a separate “Assignment of Leases and Rents,” in favor of GECF. As additional security for the Note, Badr Idbeis, Steven J. Phillips, Stephen J. Harris, and twenty other individuals executed an unlimited guaranty agreement entitled “Amended and Restated Guaranty Agreement (Construction Loan)” on January 31, 2007. This guaranty amended and restated an earlier unlimited guaranty entitled “Guaranty Agreement (Construction Loan)” that was executed by the same guarantors on various dates in favor of GECF as security for the original promissory note in the amount of $15,000,000.00. LHC executed a “Construction Loan Agreement” with GECF, which governs the terms and conditions of the Note, as well as the scope of LHC’s obligations under the various loan documents described above.
In order to acquire certain tax incentives, LHC executed an “Act of Sale” on February 1, 2006, whereby it transferred the hospital to the Hammond Area Economic and Industrial Development District (“HAEIDD”). The sale was made subject to GECF’s Mortgage and Assignment of Leases and Rents. In connection with the sale, HAEIDD then leased the hospital back to LHC and issued a taxable revenue bond entitled “Taxable ^Revenue Bond (Louisiana Hospital Center, L.L.C. Project) Series 2006” to GECF in the amount of $15,000,000.00 (“the Bond”). The Bond was governed by the “Indenture of Mortgage and Pledge” executed between HAEIDD and Hancock Bank of Louisiana, the Trustee of the Bond.
According to the clear language of the Bond, it was issued to represent the same, concurrent indebtedness as the indebtedness that was owed under the Note. In that regard, the Bond states, in pertinent part, as follows:
The Issuer [HAEIDD] hereby agrees that this Bond shall be a concurrent and coterminous obligation as the Promissory Note, with both being payable solely from amounts made directly by the Lessee [LHC] or made available by the Lessee.... Any and all payments on the Promissory Note shall constitute payment and discharge of a like amount on this Bond and any and all payments on this Bond shall be deemed to constitute payment and discharge of a like amount on the Promissory Note. This Bond shall be subject to all the interest rate features, payment features, interest rate calculation procedures, prepayment provisions, default rate and all other terms of thé Promissory Note. PAYMENTS ON THIS BOND SHALL NOT EXCEED OR BE LESS THAN PAYMENTS DUE AND PAYABLE ON THE PROMISSORY NOTE. [Emphasis in original.]
Likewise, the terms of the lease agreement between HAEIDD and LHC are equally as explicit in declaring that the *652 lease would not “disturb” the Note between GECF and LHC. The lease provides as follows:
WHEREAS, the Lessor [HAEIDD], the Lessee [LHC] and the Bondholder [GECF] desire to pursue the Bonds in a manner that will not disturb the existing Conventional Financing, but instead have the Bonds represent a duplicative obligation of the Lessee to pay the loan, in this case through the Bonds issued by the Lessor but payable solely from payments made by the Lessee[.]
On October 1, 2007, LHC failed to make the regular monthly payment due on the Note, and GECF notified LHC that all amounts would be accelerated if the October monthly payment was not made by October 22, 2007. On October 15, 2007, LHC made a partial monthly payment, which did not cure the outstanding event of default on the Note. Thus, GECF accelerated the entire balance due under the Note and made amicable demand on LHC and the guarantors to pay the outstanding balance of the Note in full.
In addition to defaulting on the Note, LHC failed to make payment on the principal and interest due on the Bond as of October 2007, thereby constituting a default under the lease between HAEIDD and LHC. LHC also failed to pay its annual administrative fees, failed to meet operating and employment requirements of the lease, and Lfailed to make rental payments under the lease, all breaches of the lease between HAEIDD and LHC. As a result, in February 2008, HAEIDD notified LHC that it was invoking acceleration, making all payments under the lease immediately due and payable.
On March 7, 2008, in response to LHC’s default on the Note, GECF filed its “Suit on Note and for Recognition of Security Interests” to begin foreclosing on the hospital. Named as defendants in the suit were LHC, Badr Idbeis, Steven J. Phillips, Stephen J. Harris, and HAEIDD. On April 9, 2008, HAEIDD filed its answer and cross-claim against LHC. Pursuant to an order of the trial court, GECF was subsequently granted a Writ of Sequestration for the seizure of the hospital, and Gulf States Real Estate Services was appointed to act as physical keeper of the property. On May 19, 2008, the remaining defendants filed an answer and third-party demand, generally denying the allegations contained in GECF’s petition and further naming as third-party defendants the other twenty-one guarantors, whom the defendants alleged were solidarily bound with them as guarantors for the alleged indebtedness of LHC to GECF.
Thereafter, GECF filed a motion for partial summary judgment to establish the liability of the defendants and to declare the validity of its security interests. HAEIDD also filed a motion for partial summary judgment, seeking to establish that it validly accelerated the lease payments and that LHC is justly liable to HAEIDD for all such unpaid amounts. Following a hearing on September 30, 2008, the trial court granted both motions in favor of GECF and HAEIDD. The trial court signed a judgment in favor of GECF on October 15, 2008. The judgment in favor of HAEIDD was signed on November 10, 2008. Idbeis, Phillips, and LHC filed motions for new trial as to the judgments rendered in favor of GECF and HAEIDD, which were both denied following a hearing before the trial court on December 8, 2008.[1] Also argued at that time was the fact that |fithe trial court had not designated either of the two judgments *653 as “appealable judgments.” Thus, the parties asked the trial court to make a determination as to the finality of said judgments. After hearing arguments on this issue, the trial court asked the parties to submit memorandums supporting their respective positions. Thereafter, on February 10, 2009, the trial court issued an “Amended and Restated Judgment on Motion for Partial Summary Judgment,” restating, in its entirety, the October 15, 2008 judgment in favor of GECF, but adding the designation of finality to the judgment. Similarly, on March 28, 2009, the trial court issued an “Amended and Restated Judgment on Motion for Partial Summary Judgment,” restating, in its entirety, the November 10, 2008 judgment in favor of HAEIDD and adding the designation of finality to the judgment.
On April 7, 2009, Idbeis, Phillips, and LHC[2] filed a motion and order for appeal from the partial summary judgments and amended and restated partial summary judgments rendered in favor of both GECF and HAEIDD.[3] According to this court’s records, there were two appeals lodged in this matter: 1) the appeal currently before us, which was docketed on October 7, 2010, under docket number 2010-CA-18S8 and concerns only the judgment rendered in favor of GECF; and 2) the appeal of the judgment rendered in favor of HAEIDD, which was docketed on October 14, 2010, under docket number 2010-CA-1881. On November 18, 2010, the appeal in 2010-CA-1881 was dismissed with prejudice on motion of the appellants. Thus, the November 10, 2008 judgment rendered in favor of HAEIDD, as amended and restated on March 28, 2009, is a final judgment and not at issue in the appeal that is before us now.
^ASSIGNMENTS OF ERROR
In brief to this court, Idbeis, Phillips, and LHC (hereinafter collectively referred to as “appellants”) assign the following specifications of error for our review:
1. The Trial Court’s refusal to grant Appellants’ Motion for New Trial was an abuse of discretion, and/or clearly contrary to the law and/or evidence.[4]
2. [GECF’s] monetary claims were subject to remission and/or novation.
*654 3. [GECF] did not adequately support its claims for keeper expenses, third party charges and attorney’s fees.[5]
4. HAEIDD’s claims had been remitted.[6]
5. There were disputed areas of material fact with regard to HAEIDD’s acceleration/termination of the lease.
6. There were disputed areas of material fact with regard to [GECF’s] and HAEIDD’s status as co-obli-gees, and remission of the debt by termination of the lease.
MOTION FOR NEW TRIAL
(Assignment of Error No. 1)
The appellants filed a motion urging the trial court to grant a new trial to reconsider and reverse the judgment on the motion for partial summary judgment in favor of GECF on the grounds that it was contrary to the law and evidence with respect to the issues of liability.
The standard of appellate review of a denial of a motion for new trial, whether on peremptory or discretionary grounds, is the “abuse of discretion” standard. Rao v. Rao, 2005-0059, p. 7 (La.App. 1 Cir. 11/4/05), 927 So.2d 356, 361, writ denied, 2005-2453 (La.3/24/06), 925 So.2d 1232. Based on our analysis of the merits of this case, the trial court’s judgment was not contrary to the law and the evidence. Thus, appellants were not entitled to a new trial on that peremptory basis (see La. Code Civ. P. art. 1972(1)), and the trial court did not abuse its discretion in denying the motion for new [7trial in that respect. Moreover, we find no abuse of discretion in the trial court’s denial of a new trial on discretionary grounds. See La.Code Civ. P. art. 1973. This assignment of error is without merit.
SUMMARY JUDGMENT
(Assignments of Error Nos. 2 and 6)
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. Gonzales v. Kissner, 2008-2154, p. 4 (La.App. 1 Cir. 9/11/09), 24 So.3d 214, 217. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. P. Art. 966(B). Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2); Aucoin v. Rochel, 2008-1180, p. 5 (La.App. 1 Cir. 12/23/08), 5 So.3d 197, 200, writ denied, 2009-0122 (La.3/27/09), 5 So.3d 143.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evi *655 dence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2); Robles v. ExxonMobile, 2002-0854, p. 4 (La.App. 1 Cir. 3/28/03), 844 So.2d 339, 341.
In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead |Rto determine whether there is a genuine issue of triable fact. Guardia v. Lakeview Regional Medical Center, 2008-1369, p. 3 (La.App. 1 Cir. 5/8/09), 13 So.3d 625, 628. A trial court cannot make credibility decisions on a motion for summary judgment. Monterrey Center, LLC v. Education Partners, Inc., 2008-0734, p. 10 (La.App. 1 Cir. 12/23/08), 5 So.3d 225, 232. In deciding a motion for summary judgment, the trial court must assume that all of the witnesses are credible. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, pp. 16-17 (La.2/29/00), 755 So.2d 226, 236. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050 (per curiam).
Appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Boudreaux v. Vankerkhove, 2007-2555, p. 5 (La.App. 1 Cir. 8/11/08), 993 So.2d 725, 729-730. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Ernest v. Petroleum Service Corp., 2002-2482, p. 3 (La.App. 1 Cir. 11/19/03), 868 So.2d 96, 97, writ denied, 2003-3439 (La.2/20/04), 866 So.2d 830.
In Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751, the Louisiana Supreme Court set forth the following parameters for determining whether an issue is genuine or a fact is material.
A “genuine issue” is a “triable issue.” More precisely, “[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes.” In determining whether an issue is “genuine,” courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. “Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact.”
A fact is “material” when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. “[F]acts are material if they potentially insure or preclude | nrecovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.” Simply put, a “material” fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. [Citations omitted.]
Because it is the applicable substantive law that determines materiality, whether a *656 particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Guardia, 2008-1369 at 4,13 So.3d at 628.
On appeal, appellants argue that GECF’s claims against appellants were extinguished through the novation created when LHC’s obligation to repay the financing for the hospital project to GECF was replaced by the clearly new obligation of LHC to make lease payments to HAEIDD. Thus, we understand appellants’ argument to be whether there was a novation extinguishing GECF’s existing obligation by the substitution of a new one and that there is a genuine issue of material fact regarding the novation.
GECF counters that there was never any intent for the Bond to replace the Note. Rather, the Bond was issued solely for the purpose of allowing LHC to obtain tax benefits. As attested to by Barbara D. Atkinson, Vice President of GECF, “[A]ll parties intended for the Note and the Bond to represent the same debt. GECF never intended for the Bond to cancel or extinguish the Note in any respect, as the language of the Bond clearly evidences.” GECF points to language in the Bond that provides as follows: “Except as otherwise provided in the Lease Agreement and/or the Indenture, nothing herein shall limit the rights and remedies of the Bondholder [GECF] under the ... Note, the Construction Loan Agreement or any of the other documents executed in connection therewith.” GECF further contends that appellants’ novation argument fails because of the chronology of events. As previously discussed, the original Note was executed in February 2005, the Bond was executed in February 2006, and the Amended and Restated Note was executed in January 2007. As argued by GECF, there would have been no need for the Amended and Restated Note in January 2007, if indeed there had been a novation of the original Note with the execution of the Bond in February 2006.
“Novation is the extinguishment of an existing obligation by the substitution of a new one.” La. Civ.Code art. 1879. “The intention to extinguish the original obligation 1 inmust be clear and unequivocal. Novation may not be presumed.” La. Civ. Code art. 1880. Louisiana Civil Code article 1881 provides:
Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. If any substantial part of the original performance is still owed, there is no novation.
Novation takes place also when the parties expressly declare their intention to novate an obligation.
Mere modification of an obligation, made without intention to extinguish it, does not effect a novation. The execution of a new writing, the issuance or renewal of a negotiable instrument, or the giving of new securities for the performance of an existing obligation are examples of such a modification.
The determining factor is the intention of the parties. The intention to novate may be shown by the character of the transaction, the facts and circumstances surrounding it, as well as by the terms of the agreement itself. Schillace v. Channell Shopping Partnership, 623 So.2d 45, 47 (La.App. 1 Cir.1993).
After a thorough review of the facts and evidence presented, and in light of the law regarding novation, we are convinced that no cancellation or substitution of the original Note and its outstanding obligations ever occurred. There is no indication in the record that the parties desired or intended to effect a novation with the issu- *657 anee of the Bond and lease agreement between HAEIDD and LHC. Rather, it appears that the Bond was issued solely for the purpose of allowing LHC to obtain certain tax benefits. The parties always intended for the original Note and the Bond to represent the same debt. However, as is clearly evidenced by the record, GECF never intended for the Bond to cancel or extinguish the Note in any respect. Thus, we find no novation in this case.
Appellants also argue that GECF’s claims against appellants were remitted in whole or in part as a result of the termination by HAEIDD of its lease with LHC. Appellants submit that because GECF and HAEIDD are solidary obligors, the termination of the lease by HAEIDD remitted and extinguished the LHC debt to both of its solidary obligees, GECF and HAEIDD.
GECF responds that to the extent that any solidary obligation was owed by LHC, it was owed to GECF and Hancock Bank of Louisiana, the Trustee of the Bond, |nnot to HAEIDD. GECF argues “Since the obligations owed by LHC to HAEIDD and GECF are separate and distinct, the argument that HAEIDD’s ‘termination’ of the [ljease somehow remitted the indebtedness owed under the Note is fundamentally flawed.” In support of its argument that the obligations owed by LHC to HAEIDD and GECF are separate and distinct, GECF cites to Section 4.B of the lease agreement, entitled “Rents and Other Amounts Payable,” each with a distinct obligation owed by LHC to a distinct party or parties. Subsection (a) requires LHC to pay Hancock Bank of Louisiana any and all amounts owed under the Bond. Under subsection (b), LHC is obligated to pay Hancock Bank’s annual fees and costs. Subsection (c) requires LHC to pay any non-exempted ad valorem and sales taxes to the requisite taxing authority that was owed same. Finally, subsection (d) mandates that LHC must pay a yearly administrative fee to HAEIDD in the amount of $145,000.00. GECF also points to Section 9.2 of the lease as support for its argument that LHC’s obligations under the Note were not to be disturbed[7] and, more specifically, would survive any default remedies taken by HAEIDD in enforcement of the lease agreement, including termination of same.[8] We agree with GECF that appellants’ remission argument has no merit.
Pursuant to La. Civ.Code art. 1888, “A remission of debt by an obligee extinguishes the obligation. That remission may be express or tacit.” The affirmative defense of remission of a debt is never presumed unless it clearly appears that a creditor intended it. The burden of proving remission, express or tacit, rests with those claiming the benefit. Simpson v. Goodman, 97-2675, p. 10 (La.App. 1 Cir. 12/28/98), 727 So.2d 555, 562. Based on the clear and unambiguous language of the Bond documents and the lease agreement, the appellants did not meet the burden of proving that LHC’s obligation under the Note was remitted, either expressly or tacitly. hüThe obligations owed by LHC to HAEIDD and GECF were separate and distinct. Thus, termination of the lease *658 agreement by HAEIDD had no impact on LHC’s obligation to GECF under the Note.
We have thoroughly reviewed the evidence in the record and agree with the trial court’s conclusion that partial summary judgment as to the issue of appellants’ liability under the Note was warranted. The arguments made by appellants on appeal are without merit. Appellants failed to bear their burden of producing evidence there were genuine issue of material fact remaining as to any of the issues relative to their liability under the Note. Accordingly, summary judgment was appropriate.
CONCLUSION
For the above and foregoing reasons, we find no error in the trial court’s ruling granting partial summary judgment in favor of GECF on the issue of liability. Thus, we affirm the February 10, 2009 judgment of the trial court. All costs associated with this appeal are assessed against appellants, Badr Idbeis, Steven J. Phillips, and Louisiana Hospital Center, L.L.C.
AFFIRMED.
KUHN, J., dissents with reasons.

. According to the record, Harris began appearing pro se effective September 9, 2008, and did not join in with the other defendants in the motions for new trial.

. Although Harris did not join in the motion for appeal, appellants’ brief indicates it was filed on his behalf. Nonetheless, the judgment rendered in favor of GECF against Harris is final as Harris may not now be added as an appellant simply by adding his name to an appellant brief. See La.Code Civ. P. art. 2121; Baton Rouge Ass’n of School Employees, Local 100 Service Employees Intern. Union, AFL-CIO v. East Baton Rouge Parish School Bd., 98-0526, p. 7-8 (La.App. 1 Cir. 4/1/99), 729 So.2d 1154, 1159, writ denied, 99-1278 (La.7/2/99), 747 So.2d 19.

. On the same day that the appeal was filed, Idbeis, Phillips, and LHC also applied for supervisory writs to this court arguing that the GECF and HAEIDD judgments should not have been declared final and appealable. The writ application was denied. GE Commercial Finance Business Property Corporation v. Louisiana Hospital Center, L.L.C., 2009-0752 (La. App. 1 Cir. 10/15/10) (unpublished writ action).

.‘‘[T]he established rule in this circuit is that the denial of a motion for new trial is an interlocutory and non-appealable judgment.” McKee v. Wal-Mart Stores, Inc., 2006-1672, p. 8 (La.App. 1 Cir. 6/8/07), 964 So.2d 1008, 1013, writ denied, 2007-1655 (La.10/26/07), 966 So.2d 583. However, the court may consider interlocutory judgments as part of an unrestricted appeal from a final judgment. Bailey v. Robert V. Neuhoff Ltd. Partnership, 95-0616, pp. 3-4 (La.App. 1 Cir. 11/9/95), 665 So.2d 16, 18, writ denied, 95-2962 (La.2/9/96), 667 So.2d 534. Because appellants’ challenge of the trial court's denial of their motion for new trial is part of the appeal from the final judgment, we may consider the issue on appeal.

. Assignment of error number three pertains to monetary issues unrelated to the judgment on appeal. Therefore, these issues are not properly before us for review.

. Because the judgment against HAEIDD is not before us for review, we will not address assignments of error numbers four or five as they pertain to issues directly related to said judgment.

. As previously indicated, the lease agreement provides that the parties desired to "pursue the Bonds in a manner that will not disturb the existing Conventional Financing.”

. Section 9.2 of the Lease provides the remedies available upon default and the following agreement to which the parties agreed:
No action taken pursuant to this Section (including the repossession of the Leased Facilities or termination of the Lease Term) shall relieve the Lessee [LHC] from the Lessee’s obligation pursuant to Section 4.3 hereof, all of which shall survive any such action.