# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-30390

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2014

Lyle W. Cayce
Clerk

HDRE BUSINESS PARTNERS LIMITED GROUP, L.L.C.,

Plaintiff – Appellant

v.

RARE HOSPITALITY INTERNATIONAL, INCORPORATED, doing business as Longhorn Steakhouse,

Defendant – Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:09-CV-977

Before HIGGINBOTHAM, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:*

HDRE Business Partners Limited Group, L.L.C. ("HDRE") brought this suit against RARE Hospitality International Incorporated ("RARE"), alleging that RARE breached a lease agreement. RARE denied liability under the lease on the ground that a subsequent contract between HDRE and RARE, an assignment of a purchase agreement, novated (replaced and extinguished) the lease. After a jury found that both HDRE and RARE intended novation, the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30390

district court entered judgment for RARE. HDRE timely appealed. For the following reasons, we AFFIRM the district court's judgment.

I.

RARE desired to lease a property in Bossier City, Louisiana (the "Property") to open a restaurant. The owner of the Property, Stirling Bossier, L.L.C. ("Stirling"), however, wanted to sell rather than lease the Property. RARE contacted HDRE and the parties agreed that HDRE would purchase the Property from Stirling and then lease the Property to RARE.

Shortly thereafter, HDRE and Stirling executed a purchase agreement in which HDRE agreed to purchase the Property from Stirling for $1,300,000. The purchase agreement included a feasibility period in which HDRE could terminate the agreement in its discretion, and a permit period in which HDRE could terminate the agreement if unable to obtain the required permits. HDRE and RARE then separately entered into a fifteen-year lease for the Property, which also included a feasibility and permit period. The lease further required HDRE to obtain title to the Property.

The parties subsequently entered into several extension agreements in which the parties agreed to extend the closing date for the purchase agreement and the feasibility period for the lease. As part of these extension agreements, HDRE agreed to waive its right to terminate the purchase agreement.

On May 5, 2008, prior to the scheduled closing date on the Property and the expiration of the lease's feasibility period, RARE informed HDRE that it would prefer to purchase the Property rather than lease it. RARE decided that "the numbers would work better as a purchase." HDRE and RARE discussed the possibility of HDRE assigning the purchase agreement to RARE.

On May 9, the scheduled closing date and the expiration of the lease's feasibility period, HDRE and Stirling entered into a final extension agreement to extend the closing date under the purchase agreement. As part of this final

No. 13-30390

extension agreement, HDRE agreed to assign the purchase agreement to RARE and to pay $25,000 to the title company by May 19, 2008.

On May 16, 2008, HDRE, RARE, and Stirling executed the assignment agreement. The assignment provided that it was effective as of the day it was executed and contained several relevant provisions. First, it provided that RARE agreed to assume all of HDRE's rights and duties as "Purchaser" under the purchase agreement and the extension agreements (collectively, the "modified purchase agreement"). Second, the assignment made explicit RARE's assumption of HDRE's duty to pay the title company $25,000 by May 19, 2008. Third, RARE agreed to pay HDRE $210,000 at the closing on the Property. Finally, and also as part of the assignment, Stirling agreed to amend the purchase agreement to provide RARE the equivalent of a feasibility period during which RARE could terminate the purchase agreement if unable to obtain internal corporate approval for the purchase of the Property.

Shortly after the parties executed the assignment, RARE notified Stirling that it was unable to obtain internal corporate approval for the purchase of the Property and exercised its right to terminate the purchase agreement. HDRE subsequently filed this breach-of-contract suit against RARE, alleging that RARE breached the lease and seeking damages for lost rental income. RARE moved for summary judgment on the ground that both HDRE and RARE intended the assignment to novate (replace and extinguish) the lease. The district court granted summary judgment for RARE. We reversed on appeal, finding a genuine dispute of material fact as to whether the parties intended novation. *HDRE Bus. Partners Ltd. Grp., L.L.C. v. RARE Hospitality Int'l, Inc.*, 484 F. App'x 875 (5th Cir. 2012).

On remand, HDRE moved for a jury trial on all issues of fact, including whether the parties intended novation. HDRE also briefed and argued to the district court that the assignment could not novate the lease as a matter of law

No. 13-30390

because the assignment was a conditional obligation and, under Louisiana law, a conditional obligation cannot novate an unconditional one. The district court rejected HDRE's argument, ruling that the assignment was not a conditional obligation. In doing so, the district court explained:

> [W]hat replaced the lease was the assignment. The assignment took place on the date it was executed. There was no conditional effect of that assignment. . . . The fact that [the] assignment had terms in it which were conditioned upon events and which might be in fact subject to suspensive conditions such as the payment of the $210,000 does not render the underlying nature of the assignment []conditional.

Following a trial, the jury found that both HDRE and RARE intended the assignment to novate the lease. The district court entered judgment for RARE, and HDRE appealed.

## II.

HDRE first contends that the assignment could not novate the lease because the assignment was a conditional obligation, and that the district court erred in ruling otherwise. The parties dispute the applicable standard of review and whether HDRE properly preserved this challenge. We need not resolve these disputes as HDRE's challenge fails even under *de novo* review.

The Louisiana Civil Code defines novation as "the extinguishment of an existing obligation by the substitution of a new one." LA. CIV. CODE ANN. art. 1879. Both the lease and the assignment constitute obligations, specifically conventional obligations or contracts. *See Langhoff Props., LLC v. BP Prods. N. Am., Inc.*, 519 F.3d 256, 260 (5th Cir. 2008); *see also* LA. CIV. CODE ANN. art. 1756 (defining an "obligation" as "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee"). By virtue of these obligations, HDRE and RARE possessed particular rights and owed particular duties with respect to each other. *See Langhoff Props.*, 519 F.3d at 260.

4

> Even though courts and practitioners alike have loosely referred to these accompanying rights and duties—especially the duties—as "obligations," this word usage is technically imprecise. Correctly put, though, these rights and duties are correlative to, and flow from, the overarching conventional or legal *obligation* . . . . It is important to distinguish the obligation from the rights and duties derived therefrom, as this distinction bears on the concept of *novation.*

*Id.*; *see* SAUL LITVINOFF, 5 LA. CIV. LAW TREATISE: THE LAW OF OBLIGATIONS § 1.1 (2d ed. 2001).  Accordingly, "[w]hen the Louisiana Civil Code speaks of *novation*, it is referring to the substitution of a new *obligation* for an existing one, rather than any substitution of the correlative rights and duties attendant on the old or new obligations." *Langhoff Props.*, 519 F.3d at 260-61.  "The most important factor in determining whether a novation has been effected is the intent of the parties."  *Scott v. Bank of Coushatta*, 512 So. 2d 356, 360 (La. 1987); *Placid Oil Co. v. Taylor*, 325 So. 2d 313, 316 (La. Ct. App. 1975).

On appeal, HDRE does not challenge the jury's finding that both HDRE and RARE intended the assignment to novate the lease.  Thus, for the purposes of this appeal, it is undisputed that RARE and HDRE agreed to restructure their original deal so that HDRE would assign its rights and duties under the modified purchase agreement to RARE *instead of* HDRE purchasing the property and leasing it to RARE.  HDRE's argument on appeal is that the assignment could not novate the lease as a matter of law because the assignment was a conditional obligation.  A "conditional obligation" is one whose enforceability is "dependent on an uncertain event."  *See* LA. CIV. CODE ANN. art. 1767; *see also* LITVINOFF §§ 5.1, 5.3.  According to HDRE, Louisiana law does not permit a conditional obligation to novate an unconditional one "regardless of the parties' intent."  HDRE asserts that the assignment was conditional because one of the duties arising out of the assignment—RARE's duty to pay HDRE $210,000—was dependent on RARE and Stirling closing on

5

No. 13-30390

the Property, which in turn was dependent on RARE obtaining internal corporate approval for the purchase of the Property, an event which never took place.

We need not resolve if or in what circumstances a conditional obligation can effect a novation under Louisiana law because we agree with the district court that the assignment was not a conditional obligation. The enforceability of the assignment was not dependent on the occurrence of an uncertain event. Rather, the assignment was an immediately binding and enforceable legal relationship. The assignment provided that it was effective as of the date it was executed, and effected an immediate transfer of rights and duties.[1] The assignment gave rise to an immediately enforceable duty: RARE's duty to assume and perform all of HDRE's responsibilities under the modified purchase agreement—including, for instance, HDRE's responsibility to pay the title company $25,000 by May 19, 2008. RARE's duty to step into HDRE's shoes as "Purchaser" in the modified purchase agreement was unconditional. As the district court observed, the conditional nature of one duty within the overarching assignment obligation (payment of $210,000 upon closing) did not render the assignment conditional.

HDRE's reliance on *Tucker v. Stone*, 115 So. 2d 636 (La. Ct. App. 1959), is unavailing. In *Tucker*, the plaintiff had agreed to release the defendant from a lease if the defendant made certain repairs to the property and paid one month of rent. *Id.* at 637-38. The defendant did not make the required repairs, and the plaintiff sued on the lease. *Id.* at 638. The court held that the parties' subsequent agreement did not novate the lease because "[t]he conditions upon which plaintiff agreed to cancellation of the lease were never met or complied

---

[1] The assignment expressly states that all of HDRE's rights and duties under the modified purchase agreement "*shall be and are hereby* transferred and assigned to, and assumed by, [RARE]." (Emphasis added).

6

No. 13-30390

with by the defendant." *Id.* at 369. In this case, unlike in *Tucker*, the parties' second agreement, the assignment, did not condition the cancellation of the lease on any event. Instead, the assignment was unconditional and, consistent with the jury's finding, effected an immediate cancellation of the lease.

Accordingly, HDRE has not established any legal impediment to novation. The jury found, and HDRE does not dispute, that the parties intended the assignment to novate the lease. We perceive no error in the district court's entry of judgment for RARE in these circumstances.

## III.

HDRE next contends that the assignment could not novate the lease as a matter of law because the assignment was not a valid contract. In particular, HDRE asserts that the assignment was a legal nullity because (1) the assignment was merely an "agreement to consider agreeing," (2) RARE's signatory "lacked present authority to bind RARE," and (3) the assignment contained a condition subject to the "whim" of the obligor, *see* LA. CIV. CODE ANN. art. 1770. RARE responds that HDRE waived these arguments by failing to raise them in the district court.

"Under this Circuit's general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate extraordinary circumstances." *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) (internal quotation marks omitted). To preserve an argument, a party must raise it "to such a degree that the trial court may rule on it." *In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993). The record reflects that HDRE did not raise, and the district court was not given the opportunity to rule on, these arguments below. Nor has HDRE demonstrated extraordinary circumstances in this case. We therefore adhere to our general rule and decline to consider HDRE's substantive arguments for the first time on appeal.

No. 13-30390

IV.

Finally, HDRE contends that the district court committed two errors in instructing the jury. HDRE first contends that the district court erred in instructing the jury on three of RARE's alternative defenses because this court previously resolved the defenses in the prior summary-judgment appeal. "We review a district court's jury instructions for abuse of discretion." *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010). Reversal is appropriate only if an erroneous instruction "affected the outcome of the case." *Id.* (quoting *Bender v. Brumley*, 1 F.3d 271, 277 (5th Cir. 1993)). HDRE has not shown that the challenged instructions, even if erroneous, affected the outcome of the case. The jury never reached RARE's alternative defenses. Novation was the first question on the verdict slip and the only question answered by the jury. As a result, HDRE has not shown that reversal is appropriate on this ground.

HDRE further contends that the district court erred in failing to give requested instructions. HDRE does not, however, identify which instructions the district court should have given. Nor does HDRE demonstrate that the district court's failure to give the requested instructions seriously impaired HDRE's ability to present its claims. *See Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004). Accordingly, HDRE has not shown reversible error with respect to the jury instructions.

V.

For the foregoing reasons, the district court's judgment is AFFIRMED.